THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

LOUIS LAMANNA,

       Defendant.

Criminal No. 15-0200

ELECTRONICALLY FILED

**<u>Memorandum Opinion and Order Granting Motion to Dismiss Indictment (doc. no. 38)</u>**

**I.  Issue**

When faced with an alleged material breach of a plea agreement (which dismissed felony counts at 11-cr-0302 upon sentencing at 12-cr-0155), and after the sentencing hearing has occurred including the actual dismissal of said counts, (a) must the Government first petition the Court for a ruling that a material breach of the plea agreement has occurred, and that the plea agreement should be set aside, and (b) must the Court grant said requested relief, <u>before</u> the Government is permitted to seek re-indictment of Defendant before a Grand Jury on the previously dismissed felony counts.  This Court answers this question in the affirmative.

In other words, it is an improper use of the Grand Jury process, and a violation of the due process rights of Defendant, for the Government to re-indict a defendant on dismissed felony counts (pursuant to a plea agreement), after the actual dismissal of said counts at the sentencing hearing, without first receiving a ruling from the Court that a material breach of the plea agreement has occurred, and a declaration from the Court setting aside the plea agreement.  This is especially true herein where Defendant has already completed his incarceration and supervised

1

release, despite the fact that he allegedly breached an important provision of the plea agreement, after the sentencing hearing but before he began his incarceration, and said breach also was known to the Government shortly after he began his custodial sentence.

## II. Background

This case presents a most unusual situation wherein the Government has re-indicted Defendant on two out of three of the exact same felony charges against Defendant that were previously dismissed, by this Court, pursuant to a plea agreement, several years after sentencing was pronounced, without first seeking a determination by this Court that Defendant in fact breached the plea agreement, and a ruling on the possible remedy for such a breach. The current felony charges at 15-cr-0200 were reinstated (albeit in a new Indictment) almost three (3) years after Defendant was sentenced (on 12-cr-0155), after he served a one (1) year custodial sentence, at least a year after the end of supervised release, and almost two (2) years after the Government became aware of the alleged breach of the plea agreement at 12-cr-0155.

The Government re-indicted Defendant on the previously dismissed charges, because Defendant allegedly failed to comply with a term of the plea agreement, whereby he was required to "immediately notify the Court and the United States Attorney of any improvement in his economic circumstances that might increase his ability to pay restitution and that occurs from the date of this agreement until the completion of his sentence, including any term of supervised release." Doc. No. 20-1. Defendant admits that he received $345,000, after sentencing was pronounced, but prior to serving his incarceration.

For the reasons that follow, the Court will dismiss the Indictment at 15-cr-0200 on due process grounds because the plea agreement still stands.[1]

### III.    Procedural Posture

Because the timeline of the procedural history of this situation is critical to the issues before this Court, the Court will briefly recount it. In 2011, an information was filed against Defendant alleging tax evasion. 11-cr-0060. Then, on December 20, 2011, Defendant was indicted at 11-cr-0302, on three counts of tax evasion, bankruptcy fraud, and money laundering, in violation of 26 U.S.C. § 7201, and 18 U.S.C. § 152(1) and 152(a)(1)(B)(i), respectively. On June 5, 2012, working with his trial counsel, and Assistant United States Attorney ("AUSA") Tonya Sulia Goodman (who substituted for the listed AUSA, Mr. Conway, who was on assignment elsewhere), the parties negotiated a plea deal, and Defendant, Louis Lamanna, signed a plea agreement. On June 8, 2012, another information was filed against Defendant alleging willful failure to pay income taxes in violation of 26 U.S.C. § 7203. 12-cr-0155.

On June 25, 2012, Defendant pled guilty before this Court to the three count information at 12-cr-0155, pursuant to the plea agreement executed on June 5, 2012. In addition to what the Court will term as the "notification clause" which is the subject of this case, the parties also agreed "that the government will move to dismiss the indictment at Criminal No. 11-0302 at the end of the sentencing hearing." 15-cr-200 at Doc. No. 20-1.

---

[1] Because the parties are discussing the possible resolution of this entire matter (see doc. no. 74), the Court will decline to address the other possible issues in this matter at this time, including whether the breach in fact occurred, the materiality of the alleged breach, the "remedy" for said breach, whether a "cure" is required, the waiver issue, any double jeopardy issue, the claim of pre-indictment delay/vindictive prosecution, and which of these issues, if any, require an evidentiary hearing (after the Court reviews the proffers of testimony by the parties (see doc. no. 75)). However, the Court has ruled on the above substantive issue so that it does not become a common practice, or threatened practice, in the Western District of Pennsylvania.

Also, critically, unlike standard cooperation agreements (which are the subject of the body of case law cited by the Government in support of its practice here), and many other plea agreements that this Court has encountered during its time on the bench (which include language regarding actions the Government may take in the event of a breach, including re-instatement of dismissed charges), there was no "relief" clause or any other specialized language stating that the Government maintained a right to re-indict Defendant upon a perceived breach of the agreement.

On November 27, 2012, at 12-cr-0155, Defendant was sentenced to a four (4) month and one (1) day term of imprisonment at Count One (1), a four (4) month and one (1) day term of imprisonment at Count Two (2), and a four (4) month and one (1) day term of imprisonment at Count Three (3), to be served consecutively, followed by a one (1) year term of supervised release at Count One (1), a one (1) year term of supervised release at Count Two (2), and a one (1) year term of supervised release at Count Three (3), to be served consecutively (later amended to be served concurrently at text order of 9/30/2014). Restitution was ordered in the amount of $708,347.01. Defendant was ordered to surrender for service of his imprisonment by January 30, 2013. However, following three (3) motions to delay his report date based upon medical circumstances, two (2) of which were granted by this Court, the Court ultimately ordered Defendant to commence his prison term on August 30, 2013. Doc. No. 39 of 12-cr-155.

After he was sentenced, but prior to being committed to the custody of the Bureau of Prisons, on July 26, 2013, Defendant received approximately $345,000.00, which for the purposes of these proceedings were not contended to be illicit or from an illicit source. He admits that he failed to notify the United States Attorney for the Western District of Pennsylvania of receipt of this money.

In October of 2013, approximately a month after Defendant began his prison sentence, AUSA Conway became aware of the receipt of the money which forms the basis for the alleged "failure to notify" breach. In the nearly two years that followed, the Government never sought a ruling from this Court to nullify or rescind the plea agreement at any time, and still has not done so.

On July 15, 2014, Defendant's term of supervised release commenced, and on July 14, 2015, his term of supervised release expired. Doc. No. 43 at 12-cr-155. Defendant is current on his restitution obligations, having paid $12,730.00 out of $708,347.01.

On September 16, 2015, the current indictment was filed at 15-cr-0200 which is identical to counts one and two of the indictment at 11-cr-0302, which was dismissed pursuant to the plea agreement, at the conclusion of the sentencing hearing on 12-cr-0155. The basis for the Government's re-indictment of previously dismissed charges is founded upon the Government's unilateral belief that Defendant breached the term of the plea agreement requiring him to notify the Court and the United States Attorney of any improvement in his financial condition. Defendant has filed the instant Motion to Dismiss and Motion for Bill of Particulars at doc. nos. 38 and 40. Following extensive briefing, the Court scheduled a hearing/argument thereon.

## IV.  Factual Stipulations of the Parties

The following factual stipulations were entered into by the parties prior to the hearing of 2/5/16. Doc. No. 70.

> The Government and Mr. Lamanna, through undersigned counsel, stipulate as set forth below in Paragraph 1 to 26 with regard to the subject matter of the hearing scheduled for February 5, 2016. By entering this Stipulation, no party waives any objections it may have to relevancy, including the relevancy of an evidentiary matter stipulated to below.
>
> 1. The grand jury returned an indictment, filed at Docket No. 2:11-cr-00302-AJS,

charging Mr. Lamanna with one count of Evasion of Tax Payment, in violation of 26 U.S.C. § 7201; one count of Bankruptcy Fraud, in violation of 18 U.S.C. § 152(1); and one count of Money Laundering, in violation of 18 U.S.C. § 1956.

2. AUSA Conway was the original prosecutor in charge of the prosecution against Mr. Lamanna at Docket No. 2:11-cr-00302-AJS.

3. While AUSA Conway was out of town on other business, the prosecution against Mr. Lamanna was handled by other AUSAs.

4. Mr. Lamanna's case was scheduled for a non-jury trial, but shortly before the trial, the parties reached a plea agreement that required Mr. Lamanna to plead guilty to three counts of the reduced charge of willful failure to file a tax return in violation of 26 U.S.C. §7203, a misdemeanor offense. Ultimately, the United States Attorney approved a plea agreement to misdemeanor tax charges under 26 U.S.C. § 7203, which was proposed by the AUSAs handling the matter. A true and correct copy of the plea agreement is attached hereto as Attachment A.

5. AUSA Conway was not consulted by any AUSA involved with the negotiation of the plea to a misdemeanor at 12-155 in advance of that plea being offered and accepted.

6. On November 27, 2012, the date of the defendant's sentencing, the Court granted the Government's motion and dismissed the felony charges.

7. The Presentence Investigation Report indicates that the defendant reported cash on hand and cash in a checking account collectively totaling $1,706.

8. Under the terms of the plea agreement, Mr. Lamanna agreed to make restitution and was required to "immediately notify the Court and the United States Attorney of any improvement in his economic circumstances that might increase his ability to pay restitution and that occurs from the date of this agreement until the completion of his sentence, including any term of supervised release."

9. By Order dated January 22, 2013, the Court extended the date for Mr. Lamanna to surrender for service of his sentence to July 30, 2013. By Order of Court dated July, 26, 2013, the Court extended the date for Mr. Lamanna to surrender for service of his sentence to August 30, 2013. Mr. Lamanna reported for service of his sentence on August 30, 2013 and finished his custodial sentence on July 15, 2014. He finished his supervised release on July 14, 2015.

10. On July 26, 2013, $375,000 was wired to Mr. Lamanna's attorney[']s escrow account. Mr. Lamanna's counsel kept $30,000 as legal fees with the remaining $345,000 belonging to Mr. Lamanna. For the purposes of the hearing on February 5, 2016, the Government does not contend that these funds were illicit or from an illicit source.

11. No disclosure of Mr. Lamanna's receipt of this money was made directly to the U.S.

Attorney's Office by Mr. Lamanna, his counsel, or anyone else associated with Mr. Lamanna.

12. The only disclosure that Mr. Lamanna claims to have made related to his receipt of the money was to Probation Officer Tara Kessler.[2] He made no disclosure to the Honorable Arthur J. Schwab or his chambers.

13. At some point in September 2013, Special Agent David McKenzie received notification that Mr. Lamanna had received the funds reflected in paragraph 10 above.

14. In October of 2013, AUSA Conway was informed by SA McKenzie that Mr. Lamanna was of investigative interest to the IRS based upon the information SA McKenzie had received in September 2013.

15. At the start of September 2013, the bank account in which $290,000 of the $345,000 was deposited had a balance of $37,889.51; the ending balance for that month was $12,490.65.

16. Government Exhibit 1 to be marked prior to the hearing on February 5, 2016, is a summary of the flow of the money received by Mr. Lamanna that the Government has created from relevant bank records. The underlying bank records have been produced to Mr. Lamanna and he agrees to waive any requirement that they be produced in open court in order to make Attachment A admissible. Mr. Lamanna disputes the accuracy and relevancy of Government Exhibit A and retains his right to object to its admission into evidence and to cross examine on it if admitted. Government Exhibits 2 - 39, to be marked prior to the hearing on February 5, 2016, are true and accurate copies of business records of PNC Bank.

17. Charles Dahlman, the Special Agent from the Criminal Investigation Division of the Internal Revenue Service, who originally investigated the case, had retired shortly before the defendant's guilty plea and Special Agent David McKenzie took over the case.

18. A grand jury subpoena listing AUSA Conway as the individual requesting the

---

[2] The Government had proposed to include Ms. Kessler as a rebuttal witness at the February 5, 2016 hearing. Defendant filed a Motion in Limine to preclude her testimony, arguing that because the Court would not permit a total production of her notes and records and instead conducted an *in camera* review regarding restitution issues (and found no such notes of any such conversation), her proposed testimony violated his rights under the Confrontation Clause, constituted hearsay, and violated the Best Evidence Rule. By text Order of February 3, 2016, the Court ruled as follows: "TEXT ORDER GRANTING 63 Motion in Limine as to LOUIS LAMANNA and DENYING AS MOOT 63 Motion to Produce as to LOUIS LAMANNA. The Court will preclude the testimony of the Probation Officer in this case because, pursuant to doc. no. 45, she is an officer of the Court and she was not performing a "prosecutorial" function (e.g., a supervised release violation petition) at the time the information was allegedly disclosed or not disclosed. Her records also are not subject to use at the hearing. See United States v. Ritter, 45 Fed. App'x. 609, *1 (9th Cir. 2002) (no due process violation/confrontation clause violation where chronological notes of probation officer were not produced for supervised release violation hearing, and where notes were not used as evidence against defendant)." In any event, the Court took no evidence other than the stipulations of the parties and certain admissions made by the parties at the hearing.

subpoena was issued to PNC on October 6, 2014 seeking information related to Louis Lamanna, Melissa Lamanna, Gabriela Lamanna, Santino Lamanna, Gianna Lamanna, Claudia Van, Marlene Lamanna, and Joseph Hudak. PNC provided records in response to the subpoena on October 29, 2014.

19. One of the dismissed counts was a felony tax offense. Under Department of Justice guidelines, the United States Attorney can refile such an offense only upon approval of the Tax Division of the Department of Justice.

20. In September 2015, as the statute of limitations approached on the dismissed Bankruptcy Fraud and Money Laundering charges and because the Tax Division of the Department of Justice had not approved the tax charges, the government sought an indictment only on the Bankruptcy Fraud and Money Laundering charges.

21. The Indictment was approved by the United States Attorney David J. Hickton. Mr. Lamanna does not accuse Hickton of acting vindictively.

22. The grand jury returned the Indictment on September 16, 2015. After the grand jury returned the Indictment, the government moved for an arrest warrant, and the United States Magistrate Judge granted the motion. The agents executed the arrest warrant at the defendant's home without incident on September 18, 2015.

23. In October 2015, Claudia Van was subpoenaed to appear before the grand jury on October 20, 2015. If called to testify, Ms. Van would testify that, in the grand jury, she was asked to confirm the accuracy of a prior statement related to the Bankruptcy Fraud charges that she originally gave in 2011; she was also asked questions concerning the Government's on-going investigation related to potential charges concerning Mr. Lamanna's receipt of the money in July 2013 and transactions related to those funds.

24. Defense Exhibit A to be marked at the hearing are authentic copies of phone records for the cell phone used by Mr. Lamanna (412-996-3619).

25. Defense Exhibit B to be marked at the hearing is a copy of the standard cooperating defendant agreement used by the U.S. Attorney's Office for the Western District of Pennsylvania.

26. Defense Exhibit C to be marked at the hearing is a true and accurate copy of the audio recording of the proceedings in this case before Magistrate Judge Mitchell on September 18, 2015. Defense Exhibit C-1 to be marked at the hearing is an accurate transcription of a portion of the proceedings captured on Exhibit C starting at 4 minutes 14 seconds and ending at 5 minutes 35 seconds.

## V. Discussion

As identified at the outset of this Memorandum Opinion, the issue before this Court is whether the Government followed the proper procedure in this situation where the Government believed Defendant breached the terms of the plea agreement, following sentencing pronouncement, and dismissal of criminal charges. The Government's position is that it may re-indict or re-instate previously dismissed charges (that were previously dismissed by this Court) without first seeking a judicial determination that the plea agreement (the contract) was breached, and may unilaterally determine the remedy for the breach. This is the current procedural posture of this case.

The Court rules that the proper and fair procedural mechanism, under basic tenets of contract law,[3] and which comports with due process requirements and public policy considerations, is for the Government to move to set aside the plea agreement based upon a material breach in a timely manner, prior to re-indictment, by the Grand Jury. The Court rules further that the use of the Grand Jury, to re-indict a defendant on Court–dismissed counts, without first obtaining a judicial determination setting aside the plea agreement, is an improper use of the Grand Jury process, and a violation of the due process rights of Defendant.

---

[3] Plea agreements, although arising in a criminal context, are analyzed under contract law standards. *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998)(citations omitted). In *United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir. 1989), the United States Court of Appeals for the Third Circuit stated as follows: "Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards. *United States v. Read,* 778 F.2d 1437 (9th Cir.1985), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986); *United States v. Baldacchino,* 762 F.2d 170 (1st Cir.1985); *Brooks v. United States,* 708 F.2d 1280 (7th Cir.1983); *Palermo v. Warden, Green Haven State Prison,* 545 F.2d 286 (2d Cir.1976), *cert. dismissed,* 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977). Courts should consider not only contract principles but also ensure that the plea bargaining process is "attended by safeguards to insure the defendant [receives] what is reasonably due in the circumstances." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499. *See also, United States v. Carrillo,* 709 F.2d 35 (9th Cir.1983)." When determining whether the plea agreement was breached, the Court must examine the plain meaning of the agreement itself and construe ambiguities against the drafter. *United States v. Gebbie*, 294 F.3d 540, 545 (3d Cir. 2002). The Government bears the burden of proving breach by a preponderance of the evidence. *United States v. Floyd*, 428 F.3d 513, 516 (3d Cir. 2005).

### A. Grand Jury Process In General

A Grand Jury's historical role is to assess whether there is adequate basis to bring a criminal charge, not an adjudicatory body that sits to determine guilt or innocence. *United States v. Williams*, 504 U.S. 36, 47 (1992). It is well-settled that "[a]n indictment returned by a legally constituted and unbiased [G]rand [J]ury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363 (1956). It is also well established that the investigative powers of a Grand Jury are very broad, and that a presumption of regularity applies to Grand Jury proceedings. *Hawthorne, Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098 (E.D. Pa. 1975)(citations omitted).

The Court does not suggest that the Grand Jury acted improperly but rather it is a distortion of the Grand Jury process and the resources of the Grand Jury to employ the Grand Jury on a case such as this, without first receiving a judicial determination from this Court that the plea agreement was breached, and the remedy, if any, for said breach. "The *ex parte* character of the [G]rand [J]ury proceedings makes it peculiarly important for a federal prosecutor to remember that, in the familiar phrase, the interest of the United States 'in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *Williams* (dissent) at 64, citing *Berger v. United States*, 295 U.S. 78, 88 (1935).

### B. Pre-Indictment Judicial Determination Setting Aside the Plea Agreement Is Required, Where Sentence Has Been Pronounced, and Felony Counts Have Been Dismissed

This Court's research has revealed no other case within the Third Circuit that is directly on point from a factual and/or procedural perspective, and the cases cited by the Government (not decided by the Court of Appeals for the Third Circuit), all relate to dissimilar situations.

In *United States v. Ataya*, 864 F.2d 1324, 1329-1330 (7th Cir. 1988), a principal case cited by both parties, the United States Court of Appeals for the Seventh Circuit imparted the following primer on the rights afforded to a defendant who has been accused of a breach of a plea agreement and the right to a judicial determination thereon:

> [A] plea agreement is a contract, but a contract in which special due process concerns for fairness and the adequacy of procedural safeguards obtain. "[O]ne requisite safeguard of a defendant's [due process] rights is a judicial determination, based on adequate evidence, of a defendant's breach of a plea bargaining agreement. The question of a defendant's breach is not an issue to be determined unilaterally by the government." To this end, this Court has held that a defendant is entitled to a pretrial hearing under the due process clause to determine if, in fact, a breach occurred.

*United States v. Ataya*, 864 F.2d 1324, 1329-1330 (7th Cir. 1988)(citations omitted).

The Government here argues for a *per se* rule that anytime it believes a Defendant allegedly violates a plea agreement, no matter what the procedural posture, it may re-indict a Defendant based upon its own belief of a violation, even after charges are dismissed by the Court, the sentence has been pronounced, and a custodial sentence has been served. While the parties appear to agree that it is the Government's burden to prove breach of a plea agreement by a preponderance of the evidence, in its responsive brief, the Government also seems to be attempting to shift the burden to Defendant to raise this issue through a Motion to Dismiss, which arguably requires a shifting of the burden of proof from the Government to a Defendant. The Government states that "Defendant maintains a 'heavy burden,' *United States v. Kubini, et*

*al*. 2014 WL 1910287, at * 29 (W.D. Pa. 2014)," and further argues that the Judges in the United States District Court for the Western District of Pennsylvania generally lack supervisory authority over the Grand Jury process. Doc. No. 54 at 9.

All of the cases cited by the Government, in support of its belabored position that no pre-indictment judicial determination of breach is required, are factually distinguishable from the present scenario, because the breaches of the plea agreements in those cases were raised pre-sentence, and in some instances pre-plea. Additionally, all of the alleged breaches relate to immunity and cooperation agreements. Those certainly are not the instant circumstances, where the breach was not alleged until after sentence was pronounced, and the felony counts upon which Defendant is now indicted were dismissed, and where Defendant's full custodial sentence had been served. Additionally, several involved cooperation agreements with express breach provisions (*United States v. Ramunno,* 133 F.3d 476 (7th Cir. 1998) and *United States v. Calabrese,* 645 F.2d 1379 (10th Cir. 1982)), which does not exist here. Even *United States* v. *Cimino,* 381 F.3d 124, 127 (2d Cir. 2004), a case cited by the Government, states that rescission is appropriate *before* the sentencing occurs. 381 F.3d 127

The Government cites to *United States v. Verrusio*, 803 F.2d 885 (1986), a case where a Defendant was re-indicted after allegedly breaching a prior plea agreement to testify truthfully before a Grand Jury and at trial against his co-conspirators, and that agreement conditioned his truthful testimony on its promise not to re-indict him on dismissed charges. In that case, the United States Court of Appeals for the Seventh Circuit held that the Government was not required to obtain a judicial determination that Defendant breached a plea agreement *before* re-indictment, but again, that case involved a *pre-sentence* re-indictment. Despite its factual and

procedural dissimilarity to this case, the following statements of the Court of Appeals in *Verrusio* are noteworthy:

> Whether his interest is more properly characterized as a property or a liberty interest, *cf. Campbell v. Miller,* 787 F.2d 217, 222 (7th Cir.1986) (characterization of interest inconsequential to disposition of claim), the requirements of due process apply to Verrusio's interest in enforcement of the plea agreement. *See Santabello,* 404 U.S. at 262, 92 S.Ct. at 498–99 (holding that a defendant has a constitutional right to enforcement of a plea bargain). Therefore, if the second indictment constituted a deprivation of his interest in enforcement of the plea agreement, then, absent exigent circumstances, Verrusio would be entitled to a preindictment hearing to determine whether he breached his obligations under the plea agreement. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (pre-deprivation hearing is "root requirement" of due process).

*United States v. Verrusio*, 803 F.2d 885, 888 (7th Cir. 1986).

The Court of Appeals in *Verrusio* went on to conclude that the second indictment did not deprive defendant of his interest in enforcement of the plea agreement, because the second indictment alone did not deny him the benefit of his bargain. The opposite is true herein.

While case law states that "a defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement, *United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir. 1976); *United States v. Resnick*, 483 F.2d 354, 358 (5th Cir.), cert. denied, 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973); *United States v. Nathan*, 476 F.2d 456, 459 (2d Cir.), cert. denied, 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973), the analogy to contract law doctrines is not determinative in the area of plea negotiation, however." *United States v. Calabrese*, 645 F.2d 1379 (10th Cir. 1981).

"Because important due process rights are involved, plea negotiations must accord a defendant requisite fairness and be attended by adequate 'safeguards to insure the defendant what is reasonably due (in) the circumstances.'" *Calabrese*, quoting *Santobello v. New York*,

404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); see *Cooper v. United States*, 594 F.2d 12, 15-20 (4th Cir. 1979).

Critically, the United States Court of Appeals for the Tenth Circuit in *Calabrese*, 645 F.2d 1379, 1390, further explained: "We believe that one requisite safeguard of a defendant's rights is a judicial determination, based on adequate evidence, of a defendant's breach of a plea bargaining agreement. The question of a defendant's breach is not an issue to be finally determined unilaterally by the government." *Id.*, citing *United States v. Simmons*, 537 F.2d 1260, 1261-62 (4th Cir. 1976).

The decision of the United States Court of Appeals for the Third Circuit, in *Stolt-Nielsen, S.A. v. United States,* 442 F.3d 177 (3d Cir. 2006), which was cited by both parties for different propositions (and is the primary case cited by the Government in support of its position that a pre-indictment judicial determination is not required), is another case which is factually inapposite from this case. The issue therein was whether the Court could enjoin a federal criminal prosecution for violation of an immunity agreement (not a re-indictment on previously dismissed charges after sentencing). However, the Court of Appeals for the Third Circuit, *in dicta* stated (citing *dicta* from the Court of Appeals from the Seventh Circuit, in the *United States v. Meyer* case), the following:

> The preferred procedure, absent exigent circumstances, would be for the government to seek relief from its obligations under the immunity agreement prior to indictment. Since the government is required to obtain a judicial determination of a defendant's breach prior to trial, it is but a *de minimis* inconvenience for the government to secure that determination pre-indictment." 157 F.3d at 1077. We have no quarrel with the Seventh Circuit's observation that, in many circumstances, a pre-indictment determination of the parties' obligations under an immunity agreement might be useful. We point out, however, that no federal court (including the Seventh Circuit) has held that a pre-indictment determination is constitutionally required. Indeed, notwithstanding its *dicta* regarding the "preferred procedure," the *Meyer* Court held the defendant was constitutionally "entitled to a judicial determination of

> his breach before being deprived of his interest in the enforcement of an immunity agreement," and that this "interest" was in not being *convicted,* rather than not being *indicted. Id.* at 1076–77.³ As the Court noted, "a post-indictment evidentiary hearing on the defendant's alleged breach was sufficient to satisfy due process." *Id.* at 1076 (citing *United States v. Verrusio,* 803 F.2d 885, 889 (7th Cir.1986)).

*Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 184 (3d Cir. March 23, 2006), as amended (May 16, 2006).

This Court cites the *Stolt-Nielsen* case, not for its holding because it is factually and procedurally distinguishable, but rather, for the principle that the Court of Appeals for the Third Circuit has recognized that a pre-indictment determination is the most appropriate mechanism generally, and it is a *de minimis* inconvenience for the Government to secure that determination pre-indictment.

The Court thus finds that under the facts and procedural history of this case, and the years of delay in seeking re-indictment (whether due to benign bureaucratic delay or otherwise), a prior judicial determination of breach of the plea agreement is not only most proper, but is a *de minimis* inconvenience for the Government. After all, the fact that Defendant has been re-indicted is not a trivial matter. Subjecting a person to an indictment, in addition to the substantial legal fees, still constitutes a risk of damage to a person's reputation and standing within his or her community. (*United States v. Williams*, at 63, "the handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo.")

In making this determination, the Court is most mindful of the important public policy considerations at play. If the Court were to countenance the approach taken by the Government in this case, the inevitable result would have a chilling effect on the plea bargaining process, in that Defendants would be left with the real possibility that dismissed charges may be re-instated

at any time without any judicial intervention, even absent any relief "in the event of breach" language, or other remedy language in the operative agreement. This result would be unjust and inequitable given the panoply of Constitutional rights that defendants give up in exchange for the plea bargains that are reached. Absent clearly worded language to which a defendant agrees, those bargains should not be undone without a prior judicial determination, and further, the resources of the Grand Jury should not be employed without such a prior judicial determination.

Defendant's Motion to Dismiss the Indictment for lack of due process is GRANTED (doc. no. 38), and all other motions will be denied as moot at this time (doc. nos. 38 and 40).

**SO ORDERED, this 16th day of February, 2016.**

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:     All ecf-registered counsel of record